UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
PERRIN & NISSEN LIMITED,

                                   <u>OPINION</u>

                      Plaintiff,

                          06 Civ. 13089 (MGC)

       -against-

SAS GROUP INC., a New York Corporation,
MICHAEL SOBO, individually, and
KELVIN CLANEY, individually,

                      Defendants.
-------------------------------------X


APPEARANCES:

         MAX MARKUS KATZ, P.C.
         Attorneys for Plaintiff
         88 University Place, 8th Fl.
         New York, NY 10003

         By:  Anil K. Prabhu, Esq.


         THE MANN LAW GROUP
         Attorneys for Plaintiff
         1420 5th Ave, Suite 2200
         Seattle, WA 98101

         By:  Philip P. Mann, Esq.


         STAES & SCALLAN, P.C.
         Attorneys for Plaintiff
         111 W. Washington Street, Suite 1651
         Chicago, IL 60602

         By:  Andrew T. Staes, Esq.
              Stephen D. Scallan, Esq.
              Joshua J. Whiteside, Esq.

```
HARRINGTON, OCKO & MONK, LLP
Attorneys for Defendants
SAS Group, Inc. and Michael Sobo
81 Main Street, Suite 215
New York, New York 10610

By:  Kevin J. Harrington , Esq.
     John T.A. Rosenthal, Esq.


BRINKLEY, MORGAN, SOLOMON, TATUM,
STANLEY, LUNNY & CROSBY, LLP
Attorneys for Defendant
Kelvin Claney
Sun Sentinel Building, 19th Floor
200 East Las Olas Blvd.
Ft. Lauderdale, FL 33301

By:  Kevin P. Crosby


WELTMAN & MOSKOWITZ, LLP
Attorneys for Defendant
Kelvin Claney
270 Madison Avenue, Rm 1400
New York, New York 10016

By:  Richard E. Weltman, Esq.
```

**Cedarbaum, J.**

Plaintiff Perrin & Nissen Ltd. brings this action against SAS Group, Inc. ("SAS"), Michael Sobo and Kelvin Claney alleging trademark infringement, trade dress infringement, and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), deceptive trade practices under N.Y. Gen. B. Law § 349, copyright infringement under the Copyright Act, 17 U.S.C. § 101, fraud, breach of contract, tortious interference with a contract, and improper assignment of a trademark application.  Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the Second Amended Complaint in its entirety. Having received defendants' motion to dismiss, plaintiff moves for leave to file a Third Amended Complaint, dropping all claims against Sobo and Claney and many of its claims against SAS.  For the reasons that follow, defendants' motion is granted in part and denied in part.  All counts and allegations in the Second Amended Complaint not included in the Third Amended Complaint are dismissed.  Accordingly, defendants Claney and Sobo are dismissed. Counts V and VI of the Third Amended Complaint are also dismissed.  Plaintiff's motion for leave to file a Third Amended Complaint is granted as to counts I-IV and VII and denied as to counts V and VI.

**BACKGROUND**

In both its Second and Third Amended Complaints, plaintiff alleges the following facts, which are taken as true for the purposes of this motion.

Plaintiff Perrin & Nissen is an English company in the business of manufacturing and distributing toy balloon products in North America and throughout the world under the name "Magic Plastic" and "Amazing Elastic Plastic."  The toy consists of plastic compound and a blow-pipe.  The user squeezes a small amount of the compound, forms it into a ball, and then inserts the blow-pipe into the ball.  When the user blows into the pipe, a balloon, which the user can play with, is created.  Plaintiff has been producing this product since 1947, selling the toy around the world under the name "Magic Plastic."  In 1994, the toy was imported into the United States to be sold in specialty stores such as Toys "R" Us and FAO Schwarz under the name "Magic Plastic."

In 1997, Defendant Claney approached the General Sales Manager at Perrin & Nissen for permission to sell the toy in the North American mass market.  Plaintiff and Claney negotiated an oral agreement that plaintiff would manufacture the toy and Claney, or a company of his choosing, would distribute it.  As part of this agreement, it was expressed that plaintiff would retain all ownership rights to the

product. The two parties also agreed that the toy should be sold in the mass retail market under a name that was different than the name used in the American high-end stores.  Plaintiff decided that the new name would be "Amazing Elastic Plastic" and that it would be licensed to Claney for use in connection with the sale of the toy to mass retailers in North America. The license was limited to products manufactured by plaintiff or its approved contractors.

In October 1997, Claney began marketing the toy as "Amazing Elastic Plastic."  Some of Claney's customers required him to assure them that the product bearing the mark "Amazing Elastic Plastic" was the same product as the one bearing the mark "Magic Plastic." Plaintiff confirmed these facts in writing, which Claney provided to his customers.

As this was occurring, on October 24, 1997, The Better Blocks Trust ("Better Blocks"), filed an intent to use Application for Trademark in "Amazing Elastic Plastic."  The application stated that Better Blocks was the owner of the mark, had a bona fide intent to use the mark in interstate commerce and that no other person had the right to use the mark in commerce.  The Application for Trademark was signed by Claney.  On or about April 22, 1998, Better Blocks filed an assignment of the intent to use Application for Trademark to

RJM Ventures, Ltd. The trademark registration was issued to RJM Ventures, Ltd. on November 16, 1999.

In early 1998, Plaintiff entered into a written manufacturing and royalty agreement with International Chemical Corporation ("ICC"), pursuant to which plaintiff granted ICC an exclusive license to manufacture the toy in North America for twenty years in exchange for a royalty of 52 cents per each four-pack of the toy sold by ICC, but subject to a minimum royalty of $260,000 per year.  Plaintiff disclosed to ICC the secret recipe and process for producing the plastic compound and ICC promised to keep this information confidential.  Claney and ICC chose a company called Direct to Retail, Inc., ("DTR") to distribute the toy.  DTR was given no ownership rights in either the trademark or the product.

In April 1998, plaintiff decided to change the packaging it was using for sales of the toy under the name "Amazing Elastic Plastic."  DTR agreed to revise the artwork and on May 1, 1998, plaintiff approved the new trade dress.  Plaintiff then entered into an agreement to license the new trade dress to Claney, ICC, and DTR.  The agreement gave them the right to use the trade dress only in connection with sales of the toy under the name "Amazing Elastic Plastic" in North America to mass market retailers and only in connection with the product

manufactured pursuant to their prior agreements with ICC and Claney.

On January 19, 1999, DTR filed for bankruptcy, forcing the plaintiff, Claney and ICC to find a new distributor.  The parties decided upon SAS, represented by Defendant Sobo.  SAS took over for DTR as the North American distributor of "Amazing Elastic Plastic" and entered into the same oral license agreement for plaintiff's trade dress and trademark as its predecessor DTR.

In the spring of 2002, the royalties plaintiff was receiving from ICC from sales of the toy began decreasing. Between July and November of 2002, plaintiff, ICC and SAS all communicated about ways to improve sales.  However, sales of the product continued to diminish and in June of 2003, ICC sent plaintiff a letter stating that they made no sales of the toy in April or May of 2003.  The letter mentioned that SAS had informed ICC that sales were slow because of imports from China.

In August 2004, Plaintiff and SAS entered an oral agreement, confirmed in writing, that plaintiff would manufacture the toy in England and sell the toy directly to SAS in the U.S.  In January of 2005, SAS placed orders with plaintiff for five containers of the toy, the last two of which were to be delivered in May and June of 2005.  Soon

after, plaintiff and SAS agreed to a price increase for the
toy for retail customers, including Target and Walgreen's.

On June 22, 2005, Sobo advised plaintiff that Target and
Walgreen's had not only rejected the price increase, but had
also decided to no longer sell the toy in their stores.  Sobo
stated that SAS had no need for any more of the toy. In
response, plaintiff demanded that SAS take and pay the quoted
price of $95,040 for the final two outstanding shipments from
the January 2005 order.  On July 20, 2005, Sobo took the
position that the plaintiff cancelled the January 2005 order
when Target and Walgreen's rejected the price increase.  Sobo
also stated that SAS owned the registered "Amazing Elastic
Plastic" trademark and that SAS would not use plaintiff's
photographs or artwork in connection with the sales of the
toy.

In September of 2006, plaintiff learned that beginning in
May of 2002, SAS had been selling knock-off toy balloon
products manufactured in China using packaging that contained
part of Plaintiff's trade dress and the trademark "Amazing
Elastic Plastic."  SAS substituted their knock-off products
for the plaintiffs' products when filling orders for the toy
for mass-market retailers, while simultaneously telling the
Plaintiff and ICC that these customers no longer wanted to
sell the toys.  Currently, SAS continues to sell the knock-off

toy under the "Amazing Elastic Plastic" mark and uses packaging almost identical to Plaintiffs trade dress.

### DISCUSSION

### I. Standard for Motion to Dismiss for Failure to State a Claim

On a **motion to dismiss** pursuant to Fed. R. Civ. P. 12(b)(6), factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). "To survive a **motion to dismiss**, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).

## II.  Standard for Leave to File an Amended Complaint

Fed. R. Civ. P. 15(a)(2) states: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Although a court should freely grant a motion for **leave** to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Second Circuit has repeatedly held that a court may deny a motion to amend on the basis of "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)(citing Foman v. Davis, 371 U.S. 178, 182 (1963)).   In determining whether a proposed amendment to a complaint would be futile, the court must adopt the same analysis as that applied on a **motion to dismiss** under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dougherty v. Town of North Hempstead Bd. of Zoning, 282 F. 3d 83, 88 (2d Cir. 2002). An amendment is futile if the **amended** pleading fails to state a claim or would be subject to a successful **motion to dismiss** on some other basis.  Id.

Plaintiff's proposed Third Amended Complaint does not add any new claims.  Rather, it simply drops claims from the Second Amended Complaint, including all claims against the individual defendants Sobo and Claney. There can be no

prejudice to defendants by allowing plaintiff to drop some of its claims.  In addition, all of the defendants' arguments as to why the Second Amended Complaint should be dismissed are directly applicable to the claims remaining in the Third Amended Complaint.  This is true because the claims in the Third Amended Complaint are identical to the claims in the Second Amended Complaint, with the exception of Count VI which simply drops a number of allegations stated in the Second Amended Complaint.  Therefore, because there is no prejudice to the defendants and because the analysis of futility of an amendment is the same as the analysis that is applied on a motion to dismiss under Rule 12(b)(6), the motion to dismiss will be treated as a motion to dismiss the Third Amended Complaint.  Plaintiff will be deemed to have dropped all claims and allegations in the Second Amended Complaint which do not appear in the Third Amended Complaint.

## III. Copyright Infringement

Plaintiff's first claim is for copyright infringement. To state a claim for copyright infringement, plaintiff must allege (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original."  Feist Publ'ns v. Rural Tel. Scrv. Co., 499 U.S. 340, 361 (1991). Registration of a copyright before or within five years of first publication is prima facie evidence of the "validity of

11

the copyright."  17 U.S.C. § 410(c).  However, whereas here, the copyright was not registered within five years of publication, the copyright benefits from no presumption and the weight to be accorded to registration is "within the discretion of the court." Id.

To prove copying, the plaintiff must show that the defendant "actually copied" the protectable parts of the plaintiff's design, and show "substantial similarity" between the defendant's work and the protectable elements of the plaintiff's work.  Boisson v. Banian, Ltd., 273 F.3d 262, 267-68 (2d Cir. 2001).

Plaintiff alleges that it is the owner of a copyright for packaging of a toy balloon which includes diagrams of a person using the toy, the slogans "Use Amazing Elastic Plastic to make toys like these, also make your own favorite toys, animals, faces or anything you can imagine," "Toy Balloon Blowing Magic!" and the phrases "Bonus Glow in the Dark!" and "An Established Toy Since 1947."  Plaintiff's copyright registration for this trade dress was issued on November 11, 2006.  Plaintiff is also the copyright owner of a photograph depicting two children using the toy that is displayed on the front of its trade dress.  Plaintiff's copyright registration for the photograph was issued on November 11, 2006.

Plaintiff alleges that SAS has infringed its copyrights in the trade dress and photograph by substantially copying them into the packaging for knock-off toy balloon products. Plaintiff alleges that it granted a license to SAS in 1998 to use its trade dress and photograph to package toy balloon products manufactured by plaintiff or plaintiff's authorized manufacturer.  However, according to plaintiff, defendant did not abide by the terms of the license.  Rather, in 2002, defendant copied the trade dress and photograph and began using them to sell knock-offs manufactured in China, thereby infringing plaintiff's copyright.  Plaintiff has attached copies of the copyrighted trade dress and the trade dress used by defendant in order to show the similarity between the two. Plaintiff claims that SAS continues to infringe its copyrights by using copies to sell knock-off products from China and does so willfully and in disregard of plaintiff's rights. According to plaintiff, defendant derives financial benefit attributable to the infringement and plaintiff has suffered monetary damages as a result.

Based on these allegations, plaintiff's Third Amended Complaint states a claim for copyright infringement because it properly alleges ownership of a copyright and copying.

## IV. Breach of Contract

Plaintiff's second claim is for breach of contract under New York law.  To state a claim for breach of contract under New York law, plaintiff must establish: (1) the existence of a valid contract, (2) performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)(citing Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584, 589 (N.Y. 1999).  In addition, the material terms of the contract must be reasonably certain. Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 482 (N.Y. 1989)

Plaintiff alleges that it entered into an oral agreement with SAS on October 5, 1999, under which plaintiff agreed to manufacture, ship and sell the toy balloon product to SAS in the United States.  Plaintiff also granted SAS a license to use the mark "Amazing Elastic Plastic" and its trade dress in connection with sales to mass market retailers in North America, but only in connection with the toy product purchased

from the plaintiff or its authorized manufacturer, ICC.
Plaintiff claims that it performed all of its duties and
obligations under the agreement but that SAS materially
breached by purchasing the toy balloon product from
manufacturers other than plaintiff or its authorized
manufacturer and by selling such products using the "Amazing
Elastic Plastic" mark and trade dress.  Plaintiff alleges that
it has suffered actual monetary damages as a result of SAS's
breach, as well as consequential and incidental damages.

On the face of the complaint, plaintiff states a claim
for breach of contract because it has adequately pled each
element of the claim under New York law.

## V. Breach of Contract

Plaintiff's third claim is also for breach of contract under New York law and is therefore subject to the same pleading requirements as its second claim.  Plaintiff's third claim alleges that in January of 2005, defendant SAS, pursuant to the oral agreement described above, placed orders with plaintiff for five containers of the toy.  The orders were agreed to orally and were confirmed in writing, which set forth the material terms and conditions of the orders including the price.  Plaintiff performed its obligations under the contract by manufacturing and packing the product, loading the product into sea containers, and offering to deliver the containers to defendant.  SAS took delivery and paid for three of the containers but refused to take delivery of the remaining two containers.  According to plaintiff, SAS materially breached the agreement by refusing to take delivery of the final two containers and refusing to pay the quoted price of $95,040 for the product.  Plaintiff further alleges that as a result of SAS's breach, plaintiff has suffered monetary damages.

On the face of the complaint, plaintiff's third cause of action is sufficient to state a claim for breach of contract.

## VI. Fraud

Plaintiff's fourth cause of action is for fraud under New York law.  To state a claim for common law fraud under New York law, plaintiff must allege (1) defendant's knowing misrepresentation of a material fact, (2) made with **intent** to deceive, (3) plaintiff's **reasonable reliance**, and (4) damages. Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 406 (N.Y. 1958).

Plaintiff alleges that in May of 2002, SAS began selling knock-off toy balloon products using packaging incorporating plaintiff's trade dress and trademark "Amazing Elastic Plastic."  The knock-offs allegedly use a cheap and inferior plastic compound manufactured in China and do not "glow in the dark" as represented on the packaging.  In addition, plaintiff claims that SAS substituted these knock-offs for plaintiff's products when filling orders from mass market retailers such as Target and Walgreen's.  Aware that plaintiff was concerned about the severe decrease in sales of the toy manufactured by plaintiff or its licensed manufacturer, ICC, SAS made a series of false and misleading statements to plaintiff including: 1) that major retailers including Walgreen's and Target had decided to no longer sell the toy in their stores, 2) that major retailers including Walgreen's and Target had rejected the proposed price increase for the toy, 3) that the reduction

in sales was due to cheap goods coming in from China, but SAS failed to disclose that they were the vendors of the cheap goods, and 4) that SAS would not use Chinese supplies for the toy. SAS failed to disclose to plaintiff that it was selling a toy made in China using the Amazing Elastic Plastic mark and trade dress. According to plaintiff, each of these statements or omissions was materially false and misleading and SAS knew that they were false when it made them. Plaintiff claims that SAS made the statements with the intention of deceiving plaintiff. In addition, plaintiff alleges that as a result of the statements, plaintiff's discovery of SAS's copyright infringement and breach of contract was delayed by several years and plaintiff wasted time, money and effort trying to improve the toy to increase sales when no such improvement was necessary. Plaintiff claims that this fraudulent conduct by SAS caused it to suffer monetary damages.

Since the complaint alleges each element of fraud, plaintiff's fourth cause of action states a claim upon which relief may be granted.

## VI. False Designation of Origin by Virtue of Misleading and Imitation Trade Dress

Plaintiff's fifth claim is for trade dress infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and the statutes and common law of the State of New York. To state a claim for trade dress infringement under the Lanham Act, plaintiff must allege (1) that its trade dress is entitled to protection under the Act and (2) that the

defendant's dress infringes on the plaintiff's dress by
creating a likelihood of confusion.  Landscape Forms, Inc. v.
Columbia Cascade Co., 113 F.3d 373, 377 (2d Cir. 1997).  The
standards for infringement under New York common law are
substantively identical to those under the Lanham Act.
Twentieth Century Fox Film Corp. v. Marvel Enter., Inc., 220
F. Supp. 2d 289, 297 (S.D.N.Y. 2002).

     To be entitled to protection under the Act, plaintiff's
trade dress must either be inherently distinctive or be shown
to have acquired distinctiveness through "secondary meaning."
Landscape Forms, 113 F.3d at 377 (quoting Two Pesos v. Taco
Cabana, Inc., 505 U.S. 763, 774, (1992); EFS Mktg., Inc. v.
Russ Berrie & Co., 76 F.3d 487, 490 (2d Cir. 1996)).
Association of origin, or secondary meaning, reflects the
goodwill a manufacturer has built up in its product such that
prospective consumers associate this product feature with the
producer rather than with the product itself.  See Inwood
Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11
(1982). In a case involving secondary meaning, the crucial
question is "whether the public is moved in any degree to buy
an article because of its source." Am. Footwear Corp. v. Gen.
Footwear Co., 609 F.2d 655, 663 (2d Cir. 1979).
     The second element of plaintiff's trade dress
infringement claim is likelihood of confusion, defined by the
Second Circuit as the "likelihood that an appreciable number
of ordinarily prudent purchasers are likely to be misled, or
indeed simply confused, as to the source of the goods in
question, or . . . as to plaintiff's sponsorship or
endorsement" of the defendant's goods or services.  Hormel
Foods Corp. v. Henson Prods., Inc., 73 F.3d 497, 502 (2d Cir.
1996).
     Plaintiff alleges its trade dress has acquired secondary
meaning in the minds of purchasers as being associated
exclusively with Perrin & Nissen, or a single anonymous source
that is Perrin & Nissen.  Plaintiff claims that the secondary
meaning arose because the trade dress has been continuously
used for the sales of its Amazing Elastic Plastic toy balloon
product in the United States, through SAS and its
predecessors, since 1998.
     Plaintiff further alleges that consumers are likely to be
confused by defendant's trade dress because the graphics,
colors, and text used by Defendants in their packaging is
virtually identical to that used in Perrin & Nissen's
packaging.  Plaintiff alleges that Defendant's use of such
packaging in conjunction with the sale of toy balloon products
manufactured in China deceives customers into believing that

the toy balloon products sold by defendants are manufactured by Perrin & Nissen and diverts those customers away.

However, the very packaging which plaintiff says that it has been using since 1998, and which it attaches to the complaint, states "Amazing Elastic Plastic™ is a Trademark of SAS Group Inc."   Documents not attached to the complaint, but produced by plaintiff in this litigation, show that plaintiff received a letter attaching an earlier version of this packaging on April 30, 1998, from SAS's predecessor in interest (RJM Ventures Ltd.) requesting its approval on the design.  The earlier version of the packaging that was sent to Perrin & Nissen in 1998 states "Amazing Elastic Plastic™ is a Trademark of RJM Ventures Ltd."

It is generally improper for the court to consider evidence outside of the complaint on a motion to dismiss. However, a court may properly consider extrinsic evidence if it is a matter of public record or if the plaintiff actually relied upon it in drafting its claims. <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).  Here, plaintiff explicitly relied upon the earlier version of the packaging in drafting its Third Amended Complaint, which states at paragraph 22, "DTR revised the artwork [for the trade dress] and on May 1, 1998, Plaintiff approved the trade dress." Paragraph 74 goes on to say, "Perrin & Nissen's packaging has been used continuously by Perrin & Nissen since at least 1998."  Finally, Perrin & Nissen attached the current version of the packaging to the Third Amended Complaint. Therefore, especially in light of the fact that the current version of the packaging attached to the Third Amended Complaint by Perrin & Nissen as its own states "Amazing Elastic Plastic™ is a Trademark of SAS Group Inc," it is proper to consider the 1998 version of the packaging which said "Amazing Elastic Plastic™ is a Trademark of RJM Ventures Ltd."   Because plaintiff not only saw the packaging, but was actually manufacturing it in 1998, plaintiff clearly had notice that SAS's predecessor in interest was asserting ownership of the Amazing Elastic Plastic trademark and was printing its own name on the packaging for the toy balloon product as early as 1998.

Therefore, plaintiff's claim that its trade dress acquired a secondary meaning in the minds of purchasers as being associated exclusively with Perrin & Nissen, or a single anonymous source that is Perrin & Nissen, is entirely implausible.  The fact that the trade dress has had another company's name printed on it (first RJM and then SAS) since its inception in 1998 makes it impossible to claim that the

public associates the trade dress solely with Perrin & Nissen,
whose name never appeared on the packaging.

Thus Plaintiff fails to state a claim for false
designation of origin by virtue of misleading trade dress.

## VII. False Description of Product

Perrin & Nissen's sixth claim is for "false or misleading
description of fact" under Section 43(a) of the Lanham Act, 15
U.S.C. § 1125(a) and the statutes and common law of the State
of New York.  Perrin & Nissen claim that Defendants have
"infringed Perrin & Nissen's rights in its trade dress" and
that it has been "damaged by such false designations of
origin."

The Lanham Act provides that a plaintiff may sue for a
"false or misleading description of fact, or false or
misleading representation of fact, which [wa]s likely to cause
confusion, or to cause mistake, or to deceive . . . as to the
origin, sponsorship, or approval of his or her goods,
services, or commercial activities by another person." 15
U.S.C. § 1125(a)(1)(A).  Under the Second Circuit's
interpretation of the statute, a plaintiff bringing suit under
§43(a) of the Lanham Act is required to demonstrate a
"reasonable interest to be protected" against the advertiser's
false or misleading claims, and a "reasonable basis" for
believing that this interest is likely to be damaged by the
false or misleading advertising. PDK Labs, Inc. v.
Friedlander, 103 F.3d 1105, 1111 (2d Cir. 1997) (quoting Ortho
Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir.
1994)).

Plaintiff alleges that Defendant SAS sells knock-off toy
balloon products in packaging that bears the legend,
"Established Toy Since 1947."  Plaintiff claims that SAS's use
of the legend, "Established Toy Since 1947" misrepresents the
nature, characteristics, qualities and geographic origin of
SAS's product because it falsely suggests that SAS' knock-off
product is the genuine toy balloon product that Perrin &
Nissen has been making since 1947.  According to plaintiff,
use of the legend is intended to deceive and does deceive
customers into believing the lesser quality products
manufactured in China are manufactured by Perrin & Nissen.
Perrin & Nissen claim they are injured because this misleading
legend diverts customers away from Perrin & Nissen.
Plaintiff's claim also incorporates the allegations in the
preceding paragraphs of its complaint, which allege that its
trade dress, which includes the legend "Established Toy Since
1947," has acquired secondary meaning in the minds of
consumers as emanating from Perrin & Nissen because it has

been on the packaging of balloon toys manufactured by Perrin & Nissen and sold in the United States since 1998.

     Plaintiff's complaint states the basic elements of a false misrepresentation of fact claim. However, as with Perrin & Nissen's trade dress infringement claim, it is implausible that consumers will be misled by the slogan "Established Toy since 1947" into believing that the Amazing Elastic Plastic toy balloons are manufactured by Perrin & Nissen. Amazing Elastic Plastic toy balloons have never been sold in the United States under Perrin & Nissen's name. Rather, all toy balloon products sold in Amazing Elastic Plastic packaging have always stated that Amazing Elastic Plastic is a trademark of SAS or its predecessor in interest. Significantly, the slogan "Established Toy Since 1947" has appeared on the trade dress directly below the trademark attributing Amazing Elastic Plastic to SAS since 1998. Therefore, consumers in the United States have no reason to have ever associated the Amazing Elastic Plastic toy or the date 1947 with Perrin & Nissen and could not be misled by the date into believing that Perrin & Nissen manufactured it.

     Thus plaintiff's sixth cause of action fails to state a claim upon which relief may be granted.

## VIII. False Advertising

     Plaintiff's seventh claim is for unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the statutes and common law of the State of New York. To state a claim for false advertising under the Lanham Act, a party must allege that the challenged statements are either literally false or, though literally true, likely to mislead and confuse consumers. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007). In addition, the false or misleading representation must involve an inherent or material quality of the product. Id. at 153 n.3. "[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality" -- a claim that "invites a comparison of the impression, rather than the statement, with the truth." Schering Corp. v. Pfizer Inc., 189 F.3d 218, 229 (2d Cir. 1999). Therefore, whereas "plaintiffs seeking to establish a literal falsehood must generally show the substance of what is conveyed, . . . a district court must rely on extrinsic evidence [of consumer deception or confusion] to support a finding of an implicitly false message." Id. (internal quotation marks omitted).

     The essence of an unfair competition claim under New York law is that "the defendant misappropriated the fruit of

plaintiff's labors by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001). "There is no complete list of the activities which constitute unfair competition. The general principle, however, evolved from all of the cases is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another." Id. (quoting Dior v. Milton, 155 N.Y.S.2d 443, 451 (N.Y. Sup. Ct. 1956), aff'd, 156 N.Y.S.2d 996 (N.Y. App. Div. 1956)).

Plaintiff claims that it is in competition with SAS by virtue of the fact that it sells toy balloon products under the "Magic Plastic" mark in the United States, while SAS sells toy balloon products under the "Amazing Elastic Plastic" mark in the United States. Plaintiff further alleges that Defendant SAS is currently advertising toy balloon products on its website using a video produced in 1997 which shows Jayne Phillips of Perrin & Nissen and her daughter demonstrating the toy produced and sold by Perrin & Nissen at that time. According to plaintiff, the video falsely represents the quality of the product sold by SAS because SAS is currently selling a cheap, knock-off product which cannot blow bubbles in the manner depicted in the video. Plaintiff alleges that it is harmed because customers who would have purchased toy balloon products from Perrin & Nissen are induced by the video to buy products from SAS instead. Plaintiff also alleges that SAS' conduct was willful.

On the face of the complaint, plaintiff has stated a claim for false advertising by alleging that the video contains a misleading representation about a material quality of the product, i.e., its ability to form bubbles, and that plaintiff has lost sales because of this misrepresentation.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. All counts and allegations in the Second Amended Complaint not included in the Third Amended Complaint are dismissed. Accordingly, defendants Claney and Sobo are dismissed. Counts V and VI of the Third Amended Complaint are also dismissed. Plaintiff's motion for leave to file a Third Amended Complaint is granted as to counts I-IV and VII and denied as to counts V and VI.

Dated:     New York, New York
           March 27, 2009

```
S/_____
  MIRIAM GOLDMAN CEDARBAUM
United States District Judge
```